UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JEFFREY GROFF,

              Plaintiff,              Case Number 14-12250

v.                                           Honorable David M. Lawson

WELLS FARGO HOME
MORTGAGE, INC.,

              Defendant.
_____/

## OPINION AND ORDER GRANTING DEFENDANT'S MOTION
## FOR SUMMARY JUDGMENT AND DISMISSING CASE WITH PREJUDICE

The plaintiff filed a complaint alleging that the defendant violated the Fair Credit Reporting Act when it reported that the plaintiff's bankruptcy-discharged home mortgage loan had a zero balance and no payment activity. The defendant has filed a motion for summary judgment contending that its report was accurate and that no violation of the Act occurred. The Court heard oral argument on the motion on May 5, 2015. The language of the statute and applicable regulation, and the meager but persuasive case law on point, all indicate that the defendant is correct. The Court agrees, and therefore will grant the motion and dismiss the complaint.

I.

The basic facts of the case are undisputed. On January 24, 2006, plaintiff Jeffrey Groff and his wife, Susan Groff, signed a promissory note and mortgage to purchase their home in White Lake, Michigan. The Groffs had trouble making their mortgage payments, and, on December 16, 2010, they executed a loan modification agreement with their lender, defendant Wells Fargo Home Mortgage (a division of Wells Fargo Bank, N.A.). However, the Groffs still were unable to keep up with their debts, and on October 25, 2011, they filed a voluntary bankruptcy petition under

Chapter 7 of the Bankruptcy Code. They received a discharge of their debts on January 31, 2012, which included the mortgage loan.

The Groffs acknowledge that they never reaffirmed the mortgage loan with Wells Fargo, but they nevertheless continued making monthly payments so that the bank would not foreclose on their home. However, in reports to consumer credit reporting agencies, Wells Fargo reported the loan account as closed, with a zero balance, and it did not report any activity on the account (including any payments made by the Groffs) after January 2012. Mr. Groff discovered the absence of any payment notations in the reporting of the mortgage loan in 2014, when he obtained a copy of his credit report. He sent letters to the three major credit reporting agencies notifying them of the omission of payments from the trade line concerning the loan. Wells Fargo was notified of the dispute, but, after investigating it, the bank continued to report the loan as closed, with a zero balance, and with no payment activity.

Plaintiff Jeffrey Groff filed his complaint on June 6, 2014, and an amended complaint on July 14, 2014, alleging two counts against the defendant for negligent and willful violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681s-2. Discovery closed on February 27, 2015, and the defendant filed its motion for summary judgment on March 13, 2015.

II.

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A trial is required only when "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). The parties have not seriously contested the basic

facts of the case. Where the material facts are mostly settled, and the question before the court is purely a legal one, the summary judgment procedure is well suited for resolution of the case. *See Cincom Sys., Inc. v. Novelis Corp.*, 581 F.3d 431, 435 (6th Cir. 2009).

The Fair Credit Reporting Act (FCRA) "exists 'to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy.'" *Boggio v. USAA Fed. Saving Bank*, 696 F.3d 611, 614 (6th Cir. 2012) (quoting *Safeco Ins. Co. v. Burr*, 551 U.S. 47, 52 (2007)). "To that end, [15 U.S.C § 1681s-2] is designed to prevent 'furnishers of information' from spreading inaccurate consumer-credit information." *Ibid.* Section 1681s-2 imposes a duty on any entity that provides information about a consumer's credit history, upon receiving a report that the consumer disputes the accuracy or completeness of the information provided, to investigate and, if needed, to correct the report of any "inaccurate or incomplete" information. Section 1681s-2(b) imposes five distinct duties on a furnisher of information that has been notified of a dispute (investigate the dispute; review all relevant information; report the results to the consumer reporting agency; if the information is incomplete or inaccurate, report those results to all other consumer reporting agencies; and if the disputed item is found inaccurate or cannot be verified, modify, delete, or block the item), and a plaintiff may prevail by showing that the entity violated any one of them. *Boggio*, 696 F.3d at 618 (holding that the "FCRA expressly creates a private right of action against a furnisher who fails to satisfy one of five duties identified in § 1681s-2(b)").

"A consumer who demonstrates that a furnisher was negligent in breaching one of these duties with respect to that consumer's disputed information is entitled to actual damages under § 1681o," and "if a consumer can establish that a furnisher willfully violated one of its duties, then under § 1681n the consumer may recover actual or statutory damages, as well as punitive damages."

-3-

*Ibid.* "Costs and reasonable attorney's fees are also authorized under both §§ 1681n and 1681o." *Ibid.*

The plaintiff contends in this case that the defendant's zero balance/zero payment report was inaccurate. The FCRA does not define the terms "accurate" or "complete," but the Federal Trade Commission has promulgated a regulation that defines the term "accuracy" for consumer credit reporting:

> Accuracy means that information that a furnisher provides to a consumer reporting agency about an account or other relationship with the consumer correctly:
> (1)   Reflects the terms of and liability for the account or other relationship;
> (2)   Reflects the consumer's performance and other conduct with respect to the account or other relationship; and
> (3)   Identifies the appropriate consumer.

12 C.F.R. § 41.41(a). The Sixth Circuit has observed that "false information about a consumer is clearly inaccurate, and so failing to report the discovery of false consumer information to all CRAs would violate [section] 1681s-2(b)(1)(D)"; and "[section] 1681s-2(b)(1)(D) [also] is violated if a report of an investigation, although it contains correct information, nevertheless 'provides information in such a manner as to create a materially misleading impression.'" *Boggio*, 696 F.3d at 617. "The duty [to correct an incomplete or inaccurate report] equally extends to the discovery of both inaccurate or incomplete consumer information and to the discovery of consumer information that is materially misleading." *Id.* at 618.

Only two federal courts have addressed the question whether a bank violates section 1681s-2 by reporting a borrower's mortgage loan account that was discharged in bankruptcy as closed, with no balance, and no payments made after the date of discharge. Both held that it does not. As the Tenth Circuit explained in *Schueller v. Wells Fargo & Co.*, 559 F. App'x 733 (2014), a note and mortgage creates a personal obligation by the note obligee and a lien on property. A discharge in

bankruptcy extinguishes the debtor's personal liability for the debt, but leaves "intact" the remedy against the property, which the court characterized as "an action against the debtor *in rem*." *Id.* at 737 (citing *Johnson v. Home State Bank*, 501 U.S. 78, 84 (2008)). The court observed that the plaintiff did "not carr[y] his burden of showing that the information Wells Fargo furnished was inaccurate[,] incomplete, . . . [or] materially misleading" when the bank reported that the plaintiff's account was closed, the balance was zero, and no payments were made, because the bankruptcy extinguished the plaintiff's personal obligation on the note. *Ibid.* The court found that the report was accurate, and it found "no authority requiring [the bank] to report [the plaintiff's] post-bankruptcy mortgage payments." *Ibid.*

Similarly, in *Horsch v. Wells Fargo Home Mortage*, No. 14-2638, --- F. Supp. 3d ---, 2015 WL 1344836 (E.D. Pa. Mar. 25, 2015), the district court held that "[r]eporting a 'zero balance' [was] accurate and complete" where it was undisputed that the plaintiff's personal obligation to repay the note was discharged in bankruptcy, even though he continued to make voluntary payments to prevent foreclosure on the home. 2015 WL 1344836, at *6. The court's reasoning is compelling:

> [The plaintiffs] contend [] that "the balance on the Note was $0, but the amount due on the mortgage instrument, although *in rem*, was the respective mortgage balance that was reportable prior to bankruptcy, less payments made during bankruptcy and thereafter." But by acknowledging that the amount due on the mortgage is *in rem*, plaintiffs concede the central point: in the eyes of the law, any future action to collect on the debt would be against the property, not the property holder. *See* Black's Law Dictionary 700 (8th ed. 2005) (defining "judgment *in rem*" as "[a] judgment that determines the status or condition of property and that operates directly on the property itself."). The debt should not be included on the borrower's credit report, therefore, because a person's credit report by definition provides information about the debts owed by that person. . . . The Federal Trade Commission's guidance is also in agreement, stating that "[a] consumer report may include an account that was discharged in bankruptcy (as well as the bankruptcy itself), as long as it reports a zero balance due to reflect the fact that the consumer is no longer liable for the discharged debt." 16 C.F.R. 600 app'x § 607(b)(6) (2010).

*Id.* at *7 (citations omitted). The *Horsch* court further concluded that reports of the plaintiffs' loans as closed with a zero balance were not just minimally complete, but were "as complete as they could be," because adding reporting of any payments made after the discharge would violate the discharge injunction imposed by the bankruptcy court:

> [The] defendants report only zero balances on the post-bankruptcy Notes not just because that is what the relevant federal regulator has advised, but also because reporting any post-bankruptcy payments would violate the injunctions that discharged those same Notes in bankruptcy. In other words, including more information about the post-bankruptcy accounts would expose defendants to the risk of future contempt actions. As a consequence, the credit report entries at issue here are as complete as they could be.

*Id.* at *9 (citations omitted); *see also In re Joubert*, 411 F.3d 452, 456 (3d Cir. 2005) (noting that "a discharge operates as an injunction against a broad array of creditor efforts to collect debts as personal liabilities of the discharged debtor"); *In re Helmes*, 336 B.R. 105, 107 (Bankr. E.D. Va. 2005) (finding that "industry standards require that a debt discharged in bankruptcy be reported to a credit reporting agency with the notation 'Discharged in bankruptcy' and with a zero balance due").

The same holds true here. There was nothing false or "inaccurate" about the bank's reporting of the mortgage loan account as closed, with a zero balance. The plaintiff does not dispute that his personal obligation to pay the note was discharged by his bankruptcy, and he does not contend that Wells Fargo ever made any effort to compel him to make further payments, or that he would have had any obligation to do so if it had. The debt was eliminated, and the bank reported it as such.

The plaintiff points to 12 C.F.R. § 41.41(a), which requires accurate reports "about an account *or other relationship* with the consumer," and insists that the continuing mortgage payments

amount to that "other relationship." But there is no support for the idea that the consumer — here, the debtor — maintained a "relationship" with the bank by voluntarily paying a debt he did not reaffirm. Rather, there was no "incomplete" or "materially misleading" reporting where the bank indicated only that the loan was closed with no balance, without including any information about payments voluntarily made by the plaintiff after his discharge. As the *Schueller* court noted, a bankruptcy discharge extinguishes a debtor's personal obligation for the home mortgage loan, if not the mortgage lien against the property. And as the *Horsch* court observed, a person's credit report is a summary of his or her past and present *personal* debts and performance in paying them, not a catalog of the economic status of any security interests that might be held by the person's lenders in various items of property owned by the debtor.

The plaintiff contends that there is a genuine issue of material fact about "the nature of the relationship" between the Groffs and their lender after the discharge, because the bank continued sending them "informational" statements regarding the mortgage loan, and the Groffs continued making payments, to stave off a foreclosure. The plaintiff suggests that, because the bank continued to accept payments and credit them toward a "declining loan balance," there is a question of fact whether any new relationship arose between them after the bankruptcy discharge, which was "inaccurately" or "incompletely" reflected in the bank's reporting of "no information" on the loan account trade line. But there is no question about the status of the parties' relationship as creditor and debtor after the bankruptcy discharge: there was none. The fact that the bank accepted the Groffs' voluntary payments and refrained from foreclosing on their home to satisfy its remaining security interest does not establish that any relationship at all existed between the parties other than as a property owner and a lien holder, each having valid and potentially adverse claims to possession

of the plaintiff's home, based upon their recorded interests in the property.  The fact that the bank continued to inform the Groffs of the declining value of its unsatisfied security interest in the home as a result of their payments made does not establish, or even suggest, that any new debtor-creditor relationship — or any similar relationship — arose between them.  The plaintiffs do not deny that they could have stopped making payments at any time, and the bank would have had no recourse against them personally.

Moreover, as the *Horsch* court observed, any report of payments voluntarily made by the Groffs as relating to the discharged mortgage loan would suggest to anyone viewing the plaintiff's credit report that the bank was engaged in exactly the conduct prohibited by the bankruptcy discharge — collecting or attempting to collect money from Groff to satisfy a previously discharged debt.  That reporting would itself have been inaccurate and false, because it would not accurately and completely reflect the truth that the plaintiff's debt had been extinguished.

### III.

The plaintiff has failed to come forth with evidence that the defendant violated any of the five obligations established by 15 U.S.C § 1681s-2(b), or otherwise show that he is entitled to relief under the FCRA.

Accordingly, it is **ORDERED** that the defendant's motion for summary judgment [dkt. #35] is **GRANTED**.

It is further **ORDERED** that the complaint is **DISMISSED WITH PREJUDICE**.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated:   May 8, 2015

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on May 8, 2015.

s/Holly Monda
HOLLY MONDA